UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AUDREY LIVINGSTON and ROBERT M. LIVINGSTON, Individually and as Representatives of the Estate of KOURTNI KELLEY LIVINGSTON, Deceased,<br><br>Plaintiffs,<br><br>VS.<br><br>DESOTO INDEPENDENT SCHOOL DISTRICT, ET AL.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>3:04-CV-1818-G |

MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants DeSoto Independent School District ("DeSoto ISD"), Larry Goad ("Goad"), and Scott Galloway ("Galloway") for summary judgment on the claims asserted against them by the plaintiffs, Audrey and Robert Livingston (the "plaintiffs" or "the Livingstons"). For the reasons discussed below, DeSoto ISD's, Goad's, and Galloway's motions for summary judgment are each granted.

I.  BACKGROUND

This case arises out of the tragic death of DeSoto Freshman High School student Kourtni Kelley Livingston ("Kourtni"). On August 23, 2002, Kourtni was running around the outdoor track as part of the training activities for the girls' basketball program. Plaintiffs' Third Amended Original Complaint ("Complaint") ¶¶ 8-10. Following the completion of her run, Kourtni became seriously ill and required medical attention. *Id.* ¶ 11. Approximately five minutes after Kourtni completed her run, Goad -- Kourtni's basketball coach -- determined that Kourtni required further medical attention and took her to the school's athletic training room where Galloway -- the head athletic trainer -- examined her and called 911 to request paramedical attention. Plaintiffs' Response, Brief and Supporting Documents to Defendant Larry Goad['s] Motion for Summary Judgment ("Response to Goad's Motion") at 9-12.

The plaintiffs aver that Goad and Galloway failed to provide necessary medical attention to Kourtni. *Id.* The failure of Goad and Galloway to provide such medical attention, the plaintiffs allege, was the proximate cause of Kourtni's death. Complaint ¶ 12.

The plaintiffs brought this case asserting causes of action under 42 U.S.C. § 1983 against Goad, Galloway and DeSoto ISD. Complaint ¶¶ 14-18, 21-24, 25-28. The plaintiffs also assert a tort claim under Texas law against DeSoto ISD.[1] *Id.* ¶ 20.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[2] The movants make such a showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The pleadings,

---

[1]  The plaintiffs originally brought state law tort causes of action against Goad and Galloway also; however, this court -- upon motion of the defendants -- dismissed the state law claims against Goad and Galloway. Memorandum Order, filed December 15, 2004.

[2]  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movants make this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the nonmovants, *id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). Summary judgment in favor of the movants is proper if, after adequate time for discovery, the motion's opponents fail to establish the existence of an element essential to their case and as to which they will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

B. <u>The Plaintiffs' Claims Against Goad and Galloway</u>

The plaintiffs assert causes of action under 42 U.S.C. § 1983 against Goad and Galloway. Goad and Galloway each maintain that they are immune from suit under the doctrine of qualified immunity. For the following reasons, the court agrees with Goad and Galloway.

*Qualified Immunity*

The threshold question the court must answer with regard to the claims against Goad and Galloway is whether they are entitled to qualified immunity. See *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991), and *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994)).

When determining Goad's and Galloway's claims of qualified immunity, this court must employ a two step analysis. *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004). First, this court must determine whether the plaintiffs have sufficiently pleaded facts that, if proven to be true, show that Goad's and/or Galloway's conduct violated a clearly established constitutional right. See *id*. Second, if the court determines that there is a constitutional violation, the court must consider whether Goad and/or Galloway failed to act in an objectively reasonable manner in light of the clearly established law at the time of Kourtni's untimely death. *Id*. Goad and/or Galloway are entitled to immunity if the court determines that either there was no

clearly established constitutional right, or that Goad and/or Galloway acted in an objectively reasonable manner.

1. <u>Step One: Violation of a Clearly Established Constitutional Right</u>

The Livingstons assert that Goad and Galloway each violated Kourtni's substantive due process "right to bodily integrity and personal security, as guaranteed by the Fourteenth Amendment. . . ." Complaint ¶¶ 24, 28; Response to Goad's Motion at 16-18; Plaintiffs' Response, Brief and Supporting Documents to Defendant Scott Galloway's Motion for Summary Judgment ("Response to Galloway's Motion") at 17-18. The Fifth Circuit has recognized "a student's liberty interest in maintaining bodily integrity." *Moore v. Willis Independent School District*, 233 F.3d 871, 875 (5th Cir. 2000) (citing *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir.) (en banc), *cert. denied sub nom.*, *Lankford v. Doe*, 513 U.S. 815 (1994)).

To establish that a state actor has deprived a person of her liberty interest in maintaining bodily integrity, a plaintiff must show that the alleged violator(s) acted with deliberate indifference towards the victim of the deprivation. *Lefall v. Dallas Independent School District*, 28 F.3d 521, 531 (5th Cir. 1994). "To act with deliberate indifference, a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez ex rel. Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 880 (5th Cir. 2004). "The deliberate

indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity." *Doe v. Dallas Independent School District*, 153 F.3d 211, 219 (5th Cir. 1998). Moreover, conduct classified as deliberately indifferent "must be more than mere or even gross negligence." *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 645 (5th Cir. 1996). Deliberate indifference is "a 'lesser form of intent' rather than a 'heightened degree of negligence.'" *Lefall*, 28 F.3d at 531 (citing *Doe v. Taylor Independent School District*, 15 F.3d at 453 n.7). Thus, proving mere negligence on the part of Goad and/or Galloway is insufficient to establish a violation of a clearly established Constitutional right. See *Hare*, 74 F.3d at 646.

      The plaintiffs argue that Goad and Galloway acted with deliberate indifference to Kourtni's rights by "not providing her with immediate and adequate medical care." Response to Goad's Motion at 15-16; Response to Galloway's Motion at 16. While the plaintiffs discuss the implications that the nature of the run had on the existence of a clearly established right, *see* Response to Goad's Motion at 18-20, it does not appear that they assert that merely having the girls' basketball team participate in a two-mile run violated Kourtni's rights. Instead, the focus is on the allegedly inadequate medical care Kourtni received after exhibiting signs of illness upon completion of the run. *Id.* at 29.

a. *Goad's Actions*

The plaintiffs allege that "Goad did not act with the sense of urgency that is required of the coach when there is a possible heat related illness." Response to Goad's Motion at 25. In support of their argument, the plaintiffs cite the affidavits of several of Kourtni's teammates which, according to the plaintiffs, establish that "[Goad] did not come immediately to the aid of Kourtni." *Id.* Throughout their response, the plaintiffs appear to measure the action, or inaction, of Goad against the standards established by the University Interscholastic League ("UIL"), an organization that oversees athletic competition for public high schools in Texas. *See, e.g.*, Response to Goad's Motion at 23-24, 28. Even when the arguments made by the plaintiffs in opposition to Goad's qualified immunity defense are liberally construed, and even when each contested fact is construed in the light most favorable to the plaintiffs, the conduct of Goad at issue appears more akin to negligence than any other, more culpable, state of mind.

As stated above, the Fifth Circuit has stated that deliberate indifference requires the actor to "consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez*, 380 F.3d at 880. Here, the plaintiffs emphasize the amount of time it took for Goad to place Kourtni in the care of Galloway. For instance, the plaintiffs assert that "[Goad] did not respond for several minutes to the cries of the [teammates] that Kourtni was having trouble breathing." Response to

Goad's Motion at 26.  The plaintiffs further assert that seventeen minutes elapsed between the time that Kourtni finished the two-mile run and the time of her arrival in the training room, and that if Goad had sent for the trainer, rather than having two teammates assist her to the training room, that would have allowed "Galloway to evaluate Kourtni about 10 minutes earlier." *Id.* at 27.  The plaintiffs urge that this delay, as well as Goad's reliance on Kourtni's teammates to look after her for the first five minutes after her run, establishes Goad's deliberate indifference towards Kourtni's constitutional rights.  *Id.* at 27-28.

      The overriding theme to the plaintiffs' opposition to Goad's claim of qualified immunity appears to be that he failed to react to Kourtni's condition in the same manner as a reasonable coach would have responded in a similar situation.  While a genuine issue of material fact might exist if this were a simple negligence case, the facts alleged by the plaintiffs do not support the contention that Goad acted with deliberate indifference to Kourtni's constitutional rights.  The facts, as alleged by the plaintiffs, suggest that Goad attended to Kourtni approximately five minutes after she finished her two-mile run.  Response to Goad's Motion at 9.  At that time, with the assistance of two of Kourtni's teammates, Goad took Kourtni to the training room within seventeen minutes of finishing the run.  *Id.* at 26.  Even the most egregious accusation, that Goad "slapped Kourtni on the face" and told her that she should not

show these symptoms during a game, *id.*, does not show that he had a "conscious disregard for [Kourtni's] health and safety." See *Hernandez*, 380 F.3d at 880.

Accordingly, even when all allegations are construed and all facts are viewed in the light most favorable to the plaintiffs, no genuine issue of material fact exists which suggests that Goad acted with deliberate indifference towards Kourtni's constitutional rights. Goad is entitled to qualified immunity and thus to summary judgment on the plaintiffs' claims against him.

b. *Galloway's Actions*

According to the plaintiffs, Kourtni arrived in the training room at approximately 10:40 a.m. Response to Galloway's Motion at 9. It was at this point that Galloway began attending to Kourtni. The facts pertinent to Galloway's alleged conduct, as stated by the plaintiffs in response to Galloway's motion for summary judgment, are as follows:

> Galloway shined a light into [Kourtni]'s eyes, stated her eyes were not tracking and that he was going to call 911. Galloway then left the room to call 911 to report a student with a possible heat stroke. However, at no time did Galloway take Kourtni's temperature. . . . Galloway then came back into the room after the 911 call and he placed a wet towel on her face because she was not responding. According to Galloway and Goad's affidavit at no time did [Goad or Galloway] perform cardiopulmonary resuscitation (CPR) on Kourtni. . . . Within 5 minutes of Galloway calling 911, paramedics arrived in the training room.

Response to Galloway's Motion at 11-12.

The plaintiffs submit that "[Galloway] violated [Kourtni's] established Constitutional right to her bodily integrity by not providing her with immediate and adequate medical care. The acts of [Galloway] were done with callous disregard and deliberate indifference to [Kourtni's] Constitutional rights." *Id.* at 16. According to the plaintiffs, Galloway failed to follow appropriate health care procedures for treating heat stroke symptoms. *Id.* at 28. Specifically, the plaintiffs assert that although Galloway knew "that Kourtni was exhibiting signs of heat stroke or heat illness [he] did not transport [Kourtni] to [the] hospital immediately according to his formalized training and did not follow proper steps in regards to treating student-athletes with heat illness according [to] the UIL guidelines." *Id.* at 25-26. The plaintiffs do acknowledge, however, that within ten minutes of her arrival, Galloway had called 911 and requested that paramedics come to treat Kourtni. *Id.* at 27.

Like the claim against Goad, the plaintiffs' claim against Galloway appears to be based upon Galloway's alleged failure to act in a reasonable manner. The factual allegations on which the plaintiffs base their claims are insufficient to support a finding that Galloway acted with deliberate indifference towards Kourtni's rights. It appears that Galloway called 911 within minutes of Kourtni's arrival in the training room. Response to Galloway's Motion at 11, 27. Such conduct does not show a conscious disregard for her health, and thus her right to bodily integrity. No genuine issue of material fact exists that would support a finding that Galloway violated

- 11 -

Kourtni's constitutional rights. Therefore, Galloway is entitled to qualified immunity and summary judgment on the plaintiffs' claims against him.

2. Step Two: Objective Reasonableness

As stated above, a plaintiff must satisfy the first step of the qualified immunity analysis -- that an established constitutional right was violated -- before reaching the second step. *Alexander*, 392 F.3d at 144  The court has determined that no such violation occurred; therefore, resolution of the issue of the objective reasonableness of Goad's and Galloway's conduct is unnecessary.

C.   The Plaintiffs' Claims Against DeSoto ISD

1. *Section 1983 Claim*

"Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements:  a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001); see also *Palmer v. City of San Antonio, Texas*, 810 F.2d 514, 516 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987), *abrogated on other grounds in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167 (1993)).

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives the plaintiffs of their constitutional rights. A governmental unit cannot be liable under § 1983, however, merely because it employed a tortfeasor. See *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). According to the Supreme Court, "[t]he 'official policy' requirement . . . make[s] [it] clear that municipal liability [under § 1983] is limited to action for which the municipality is actually responsible . . . that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 479-80 (1986). The policy or custom must be "the moving force of the constitutional violation." *Palmer*, 810 F.2d at 516 (quoting *Monell*, 436 U.S. at 694).

A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom unless the actor or actors involved had been given official policy-making authority. See *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989) (citations omitted); *Palmer*, 810 F.2d at 516-17. "'[M]unicipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives' by [municipal] policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur*, 475 U.S. at 483-84).

The Fifth Circuit defines official policy as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd in relevant part on rehearing*, 739 F.2d 993 (5th Cir. 1984) (en banc); see also *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

The plaintiffs maintain that DeSoto ISD has "failed to show by any evidence that [it] had adequate medical procedures in place to deal with heat related illnesses." Plaintiffs' Response, Brief and Supporting Documents to Defendant DeSoto ISD['s] Motion for Summary Judgment ("Response to DeSoto ISD's Motion") at 27. Furthermore, the plaintiffs argue, the DeSoto ISD Board of Trustees failed to officially adopt the DeSoto Athletic Training Room's policy for treating heat related illnesses. *Id*. at 27, 28. The alleged failure of the Board of Trustees to adopt policies and procedures relating to heat related illnesses, the plaintiffs assert, was a direct cause of Kourtni's death. *Id*. at 27.

"A school district's failure to adopt an official policy on a given subject may serves as the basis for § 1983 liability only when the omission 'amount[s] to an intentional choice, not merely an unintentionally negligent oversight,' and the Supreme Court has held that such an omission is equivalent to an intentional choice only where the entity has acted with deliberate indifference." *Doe v. Dallas Independent School District*, 153 F.3d at 217 (citing *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)). "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.*

DeSoto ISD contends that it is "entitled to summary judgment because the evidence conclusively demonstrates it has no policy, custom, or practice of deliberate indifference to the medical needs and safety of its students. To the contrary, [DeSoto ISD's] policies reflect an intent to insure that the rights of students are recognized and protected, and that all proper steps are taken to insure the students' safety and well-being."³ DeSoto ISD's Motion at 12.

---

   ³ In support of its motion for summary judgment, DeSoto ISD first argues that "[i]f Defendants Goad and Galloway are entitled to qualified immunity, then it follows, as a matter of law, that [DeSoto ISD] is also entitled to summary judgment." Defendant DeSoto ISD's Brief in Support of Motion for Summary Judgment ("DeSoto ISD's Motion") at 12 (citing *Los Angeles v. Heller*, 475 U.S. 796 (1986)). The Fifth Circuit has previously rejected a similar argument. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1398 n. 15 (5th Cir. 1994). In *Leatherman*, the Fifth Circuit -- in its opinion on remand -- stated, "qualified immunity does not mean that no constitutional violation occurred -- only
(continued...)

DeSoto ISD further asserts that the failure to adopt an official policy directed specifically towards the treatment of heat related illnesses does not establish that it acted with deliberate indifference towards the constitutional rights of its students. Defendant DeSoto [ISD]'s Reply Brief to Plaintiffs' Response to Defendant's Motion for Summary Judgment ("DeSoto ISD's Reply") at 4-8.  According to DeSoto ISD, "the treating of an alleged heat stroke victim would fall within [its] policy of providing medical care to its students and thus, there is no failure to adopt policies to provide medical care to students on the part of [DeSoto ISD]." *Id.* at 4-5.  At the time of Kourtni's death, DeSoto ISD had in place a policy stating:

> The District shall attempt to ensure student safety through supervision of students in all school buildings, on all school grounds, and through special attention to the following:
>
> * * *
>
> 4.  Providing first-aid care for students in case of accident or sudden illness.

DeSoto ISD Policy FFF, Student Welfare: Student Safety, Defendant DeSoto ISD's Appendix to Motion for Summary Judgment and Brief at 0024.

Moreover, the policy, or failure to adopt an appropriate policy, must be the "moving force" behind the deprivation of constitutional rights.  See *Palmer*, 810 F.2d

---

³(...continued)
that the officer is immune.  And, it is well-established that an individual officer's qualified immunity does not protect a municipality."  *Id.*  Accordingly, Goad's and Galloway's qualified immunity does not mandate summary judgment on the plaintiffs' section 1983 claim against DeSoto ISD.

at 516 (quoting *Monell*, 436 U.S. at 694).  DeSoto ISD has submitted the report of the medical examiner of the autopsy performed on Kourtni.  Defendant DeSoto ISD's Supplemental Appendix to Motion for Summary Judgment and Brief at 0069-0072.  The report contains the medical examiner's conclusion that Kourtni "died of a sudden cardiac death due to widespread sickled thrombi associated with physical exertion, due to sickle cell trait (heterozygous)." *Id.* at 0072.  It would appear that the "moving force" behind Kourtni's death, and thus the alleged deprivation of her constitutional rights, is the widespread sickle thrombi which had previously gone undetected.  There is no indication in the coroner's report that Kourtni's death was caused by heat related illness.

      The plaintiffs have failed to show that the evidence in the record is sufficient to support a resolution in their favor of the issues of fact relating to DeSoto ISD's alleged deliberate indifference and that such indifference was the moving force behind a violation of Kourtni's constitutional rights.  See *Anderson*, 477 U.S. at 249.  Accordingly, no genuine issue of material fact exists, and summary judgment is granted on the plaintiffs' section 1983 claim against DeSoto ISD.

2. *State Law Tort Claim*

In the complaint, the plaintiffs also assert a state law tort claim against DeSoto ISD, alleging that "DeSoto I.S.D. took custody of Kourtni . . . when her parents dropped her off at school and therefore assumed the 'in loco parentis' status and capacity. DeSoto I.S.D. failed to exercise reasonable care for Kourtni . . . while serving in this 'in loco parentis' capacity." Complaint ¶ 20. DeSoto ISD asserts that it is entitled to summary judgment on this claim as well, as it enjoys governmental immunity from the cause of action asserted. DeSoto ISD's Motion at 16.

Generally, governments and government agencies are immune from suit, unless an exception is provided by statute. In Texas, the Texas Tort Claims Act (the "Act"), TEX. CIV. PRAC. & REM. CODE § 101.001, *et seq.* (Vernon 2005), provides the authority to bring an action, in certain limited circumstances, against a governmental unit within the state. "Governmental unit" is defined as "a political subdivision of this state, including any . . . school district." *Id.* § 101.001(3)(B). The sole exception to the extension of immunity granted to a school district is for torts involving motor vehicles. *Id.* §§ 101.021, 101.051; *Jones v. Houston Independent School District*, 979 F.2d 1004, 1007 (5th Cir. 1992).

The plaintiffs' claims against DeSoto ISD do not arise out of the use or operation of a motor vehicle. Accordingly, DeSoto ISD is immune from the

plaintiffs' state law tort claim, and summary judgment is therefore granted on this claim.

### III.  CONCLUSION

For the reasons discussed above, Goad's, Galloway's, and DeSoto ISD's motions for summary judgment are each **GRANTED**.  Judgment will be entered that the plaintiffs take nothing on their claims in this case.

**SO ORDERED**.

May 12, 2005.

_____
A. JOE FISH
CHIEF JUDGE